```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
DOMINIC F. AMOROSA et al.,                                       :
                                                                 :
                                  Plaintiffs,                    :
                                                                 :        21-CV-3137 (JMF)
              -v-                                                :
                                                                 :        OPINION AND ORDER
GENERAL ELECTRIC COMPANY and JEFFREY S.                          :
BORNSTEIN,                                                       :
                                                                 :
                                  Defendants.                    :
                                                                 :
-----------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In this case, Plaintiffs Dominic F. Amorosa and Dominic F. Amorosa, Esq., Profit Sharing Plan (together, "Amorosa") bring claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a) (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5 ("10b-5") against General Electric Company ("GE") and one of its former executives. Amorosa's claims mirror those brought on behalf of a class in *Sjunde AP-Fonden v. General Electric Co.*, No. 17-CV-8457 (JMF) (S.D.N.Y) (the "Class Action"), claims that the Court largely — although not entirely — dismissed in a pair of earlier rulings. *See Sjunde AP-Fonden v. Gen. Elec. Co.*, 417 F. Supp. 3d 379 (S.D.N.Y. 2019) ("*Sjunde I*"); *Sjunde AP-Fonden v. Gen. Elec. Co.*, No. 17-CV-8457 (JMF), 2021 WL 311003 (S.D.N.Y. Jan. 29, 2021) ("*Sjunde II*").[1] Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims in this case. For the reasons that follow, the motion is GRANTED and Amorosa's claims are dismissed.

---

[1] The Court incorporates by reference its discussion of both the relevant facts and the applicable legal standards in *Sjunde I* and *Sjunde II*, familiarity with which is presumed.

## DISCUSSION

Amorosa's Amended Complaint suffers from a glaring and fatal flaw: It is copied almost verbatim from the operative complaint in the Class Action (the "Class Action Complaint" or "CAC"), *see* Class Action, ECF No 191 ("CAC"), and from an Order memorializing a settlement between the SEC and GE, *see* ECF No. 19-13 ("SEC Order").

Courts "generally do not consider averments taken directly from uncorroborated allegations embedded in a complaint in another action or parroted allegations for which counsel has not conducted independent investigation." *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15-CV-6034 (RJS), 2016 WL 5794774, at *8 (S.D.N.Y. Sept. 30, 2016) (internal quotation marks omitted). In part, that is because "[b]y presenting to the court a pleading, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). "When citing alleged confidential witnesses in a complaint, the certification means that counsel has spoken with these confidential witnesses and knows who they are." *In re Lehman Bros. Sec. & Erisa Litig.*, No. 09-MD-2017 (LAK), 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013). Indeed, courts in this district have repeatedly found that, "[b]y drawing its factual allegations from the statements of confidential witnesses in [another] complaint, [a plaintiff] is attempting to rely on the substance of those allegations without being held responsible for certifying that they are supported by some factual basis." *VNB Realty, Inc. v. Bank of Am. Corp.*, No. 11-CV-6805 (DLC), 2013 WL 5179197, at *7 (S.D.N.Y. Sept. 16, 2013). "Such reliance is

impermissible, particularly in light of counsel's personal non-delegable responsibility under Rule 11 to validate the truth and legal reasonableness of the papers filed." *Id.*[2]

Similarly, the Second Circuit has held that "portions of [an] SEC order quoted in [a] complaint are in the nature of allegations 'upon information and belief,' which cannot ordinarily form the basis of a fraud claim." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 180 (2d Cir. 2015); *see* 15 U.S.C. § 78u-4(b)(1) (providing that, for any allegation made on information and belief in a securities-fraud case, "the complaint shall state with particularity all facts on which that belief is formed"). In *Lorely*, the Second Circuit permitted the plaintiffs to rely on findings from an SEC order because the plaintiffs "also allege[d] non-conclusory facts and . . . these additional factual pleadings [we]re sufficient to render unproblematic any implied reliance on the SEC findings." 797 F.3d at 180. Critical to the Court's decision was the fact that "[t]hese allegations — albeit clearly overlapping with the SEC order — [we]re made directly by Plaintiffs, and were signed by Plaintiffs' counsel subject to the requirements of Rule 11." *Id.*; *see also In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458,

---

[2] *See also, e.g.*, *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-CV-4420 (PAE), 2021 WL 4341500, at *17 (S.D.N.Y. Sept. 22, 2021) ("[C]ourts have been loath . . . to sustain as sufficiently particular securities fraud complaints based on . . . uncorroborated statements of CWs [that] are sourced secondhand" (internal quotation marks and citations omitted)); *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 800 & n.22 (S.D.N.Y. 2020) ("[C]ourts have tended not to credit uncorroborated statements of CWs who are sourced secondhand — with whom plaintiffs' counsel have not themselves interacted."); *Deluca v. GPB Auto. Portfolio, LP*, No. 19-CV-10498 (LAK), 2020 WL 7343788, at *16-17 (S.D.N.Y. Dec. 14, 2020) ("As a threshold matter, plaintiffs cannot rely on allegations from other lawsuits to plead legally sufficient fraud claims. A fraud complaint that *merely* recites others' allegations is generally insufficient under Rule 9(b) where it does not allege also non-conclusory facts to support its claim for relief." (internal quotation marks omitted)); *In re USB AG Sec. Litig.*, No. 07-CV-11225 (RJS), 2012 WL 4471265, at *17 n.17 (S.D.N.Y. Sept. 28, 2012) ("[B]ecause such allegations are taken directly from uncorroborated allegations embedded in a complaint in another action, the Court will not consider them."), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

3

472 (S.D.N.Y. 2012) (declining to strike allegations based on information contained in an SEC complaint where the plaintiffs had "documentary support for some of their allegations" and "publicly available information support[ed] plaintiffs' allegations"), *aff'd*, 525 F. App'x 16 (2d Cir. 2013) (summary order); *Toohey v. Portfolio Recovery Assocs., LLC*, 15-CV-8098 (GBD), 2016 WL 4473016, at *2 n.4 (S.D.N.Y. Aug. 22, 2016) (denying a motion to strike where "[t]he allegations in the [complaint], although overlapping with the [Consumer Financial Protection Bureau] Consent Order, were made directly by [the plaintiff] and signed by her counsel").

Additionally, the Second Circuit has cautioned that "a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues" — such as the SEC Order in this case, which includes a proviso that GE neither admits nor denies the SEC's allegations, *see* SEC Order 1 — "cannot be used as evidence in subsequent litigation between that corporation and another party." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Instead, such a consent decree is "the result of private bargaining, and there was no hearing or rulings or any form of decision on the merits" by a court. *Id.* Although "there is no absolute rule barring a private plaintiff from relying on government pleadings and proceedings in order to meet" the requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *In re Fannie Mae*, 891 F. Supp. 2d at 471, a court must be mindful of the limitations of such records, *see also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-3495 (AT), 2017 WL 4049253, at *4 (S.D.N.Y. June 28, 2017) (noting that "[c]ourts in this district have read *Lipsky* with varying degrees of breadth"), *aff'd sub nom. Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir. 2018) (summary order).

These standards are fatal to Amorosa's claims. Amorosa candidly admits, as he must, that the allegations in his Amended Complaint "rel[y] upon the SEC Findings and the CAC," as well as his "own [allegations] which are based upon [his] analysis of the SEC Findings and the CAC, which corroborate each other." ECF No. 22 ("Pl.'s Opp'n"), at 4. In fact, Amorosa's Complaint "incorporates by reference" more than 125 paragraphs from the CAC, *see* ECF No. 17 ("Compl."), ¶ 9; recycles large swaths of the CAC, much of it verbatim, *see* ECF No. 20 ("Defs.' Mem."), at 9; and relies on statements of several former employee confidential witnesses described in the CAC, *see* Compl. ¶¶ 27-32, 34, 39. In addition, the Complaint quotes, with citation, large sections of the SEC Order. Compl. ¶¶ 9-10, 12, 14-26, 33, 36, 40, 43, 45, 47-50, 57, 63, 72-73, 96. The remaining paragraphs of the Complaint are largely conclusory claims or legal conclusions, which the Court is not required to accept as true, *see, e.g.*, *id.* ¶¶ 38, 42, 46, 52, 62; quotations from public filings or announcements, *see, e.g.*, *id.* ¶¶ 41, 51, 53-56, 76-78, 83-85, 93-94, 97, 102-03; or quotations from market analysts expressing surprise when GE's poor earnings were announced, *see, e.g.*, *id.* ¶¶ 75, 81-82, 89-92, 99-101, 105-06. Amorosa claims that he did his "own investigation and analysis of the allegations," Pl.'s Opp'n 8, but his "investigation" appears to have been limited to reviewing and comparing the allegations in the CAC and the SEC Order; there are few, if any, new *factual* allegations.[3]

Amorosa's attempts to defend his wholesale copying fall flat. First, he argues that he is a "member[] of the proposed class" and that, "[o]bviously, [he] should be able to rely upon the CAC which made allegations on behalf of Plaintiff[] subject to certification." Pl.'s Opp'n 9. But

---

3   Amorosa makes one new factual allegation based on recent developments. He alleges that on April 27, 2021, GE's Chief Financial Officer "admitted publicly . . . that GE had, as of the beginning of 2019, a $14 billion factoring balance." Pl.'s Opp'n 5 & n.4. But because the alleged false or misleading statements are contained in GE's filings and public statements from 2015 to 2017, this allegation is mostly irrelevant.

Amorosa *opted out* of the Class Action, meaning he is decidedly *not* a member of the class. *See* Compl. ¶ 2; ECF No. 10; Defs.' Mem. 1. Second, Amorosa argues that the Court should excuse his failure to conduct a reasonable inquiry because he *tried* to interview the former employees, but class counsel did not make them available to him and he was not able to ascertain their identities on his own or by contacting GE "for obvious reasons." Pl.'s Opp'n 10; *see also* Compl. ¶ 9. But the fact that conducting an independent investigation is difficult or costly does not excuse Amorosa from carrying his burdens under Rule 11. Amorosa is free to pursue his own recovery by opting out of the class, but that means he cannot piggyback on the efforts of class counsel. Third, Amorosa argues that he has corroborated the former employee's assertions by comparing them to similar findings in the SEC Order. *See* Pl.'s Opp'n 9. But, as noted above, the quotations from the SEC Order must be treated as "in the nature of allegations 'upon information and belief' which cannot ordinarily form the basis of a fraud claim." *Loreley*, 797 F.3d at 180; *see, e.g.*, *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 3989066, at *4 ("The unfairness of permitting a plaintiff in a separate action to rely blindly at the pleading stage primarily on confidential witness statements from another case to meet its pleading burden is patent."); *In re UBS AG Sec. Litig*, 2012 WL 4471265, at *17 n.17 ("[T]he Court . . . need not consider parroted allegations for which counsel has not conducted independent investigation.").

Finally, Amorosa relies on *In re Mylan N.V. Securities Litigation*, 379 F. Supp. 3d 198 (S.D.N.Y. 2019), *see* Pl.'s Opp'n 9, but it does not bear the weight that Amorosa puts on it. Granted, the *Mylan N.V. Securities Litigation* court did note that there is no "absolute rule" against a plaintiff basing "factual allegations on complaints from other proceedings." 379 F. Supp. 3d at 214-15. But there, the court found that the allegations — which were derived from a parallel action brought by the state attorney general — had been "verified by Plaintiffs' counsel."

6

*Id.*; *see also, e.g.*, *N. Collier Fire Control*, 2016 WL 5794774, at *8 ("Plaintiffs' reliance on a confidential witness with whom they personally communicated is distinguishable from a lawyers' cribbing uncorroborated allegations that he makes no effort to verify from a complaint in another action." (internal quotation marks omitted)).  Amorosa, by his own admission, verified none of what he copied.  In short, because Amorosa's Amended Complaint — unlike the operative complaint in *In re Mylan N.V. Securities Litigation* — "alleges no non-conclusory facts that support the truth of these secondhand allegations[,] [a]llowing plaintiff[] to rely on them is . . . impermissible under Rule 9(b)."  *Deluca*, 2020 WL 7343788, at *17.

Disregarding the allegations copied from the CAC (including those derived from the former employees whom Amorosa did not interview), and mindful that those portions of the Amended Complaint that are direct quotations from the SEC Order are to be considered "in the nature of allegations 'upon information and belief' which cannot ordinarily form the basis of a fraud claim," *Loreley*, 797 F.3d at 180, the Court is left with very little.[4]  For starters, it goes without saying that what is left is insufficient to support the claims that the Court found insufficiently pleaded in *Sjunde I* and *Sjunde II*.  That includes Amorosa's claim that Jeffrey Bornstein made false statements to the public when he stated (1) on January 20, 2017, that "there's good underlying performance here.  It's not just about, it's very little to do with GE Capital factoring"; and (2) on April 21, 2017, that "[w]e're not pulling future profits forward."

---

[4]   Even if quoting the SEC Order demonstrated a material misrepresentation or omission, the SEC Order does not allege scienter.  *See* SEC Order ¶ 43.  Moreover, the Court has already considered the allegations in the SEC Order, which was submitted by the parties in connection with the Court's adjudication of the motion to dismiss the CAC, and concluded that it "d[id] not change [the Court's] analysis" that the majority of the allegations in the CAC (and, by extension, in Amorosa's Amended Complaint) are insufficient because the Order "concerns non-scienter-based violations of the Exchange Act," and "in several respects, . . . actually *undermines* Plaintiffs' allegations of scienter."  *Sjunde II*, 2021 WL 311003, at *14.

Compl. ¶¶ 53, 58; *see* Pl.'s Opp'n 1 n.1, 17-18; *see also Sjunde I*, 417 F. Supp. 3d at 414; *Sjunde II*, 2021 WL 311003, at *12. It also includes Amorosa's claim that "GE failed to disclose, in violation of Item 303, its reduction of cost estimates on its LTSAs which increased its Power Unit's profits significantly." Pl.'s Opp'n 18; *see Sjunde I*, 417 F. Supp.3d at 407-08 (dismissing the claim of a purported "trend" of "eliminat[ing] the GE-sourced labor requirements in LTSAs, thereby raising the profit margin"). And, in any event, Amorosa offers nothing to establish scienter. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015) ("For Defendants' breach of their Item 303 duty to be actionable under Section 10(b), Plaintiff[] [was] required adequately to plead each element of a 10b-5 securities fraud claim.").[5]

In *Sjunde I* and *Sjunde II*, only two claims survived Defendants' motions to dismiss: those concerning (1) factoring in GE's 2016 Form 10-K and (2) GE's failure to provide adequate Item 303 disclosures related to factoring in its financial statements from 2015 on (as well as corresponding "control person" claims against Bornstein). *See Sjunde II*, 2021 WL 311003, at *11, 13-14. Amorosa argues that his corresponding claims should survive too because his Amended Complaint "contains the identical allegations which the Court sustained in the CAC either by specific allegation, or by incorporating by reference paragraphs . . . from the CAC." Pl.'s Opp'n 12; *see also id*. at 1. But the statements of the former employees alleged in the CAC

---

[5] Similarly, Amorosa argues that GE filed a misleading statement when it "described changes in its Power business as arising from items other than reductions in cost estimates in its service agreement" in its 2016 Form 10-K. Pl.'s Opp'n 19. As Defendants explain, however, the 2016 Form 10-K accurately "provided that GE regularly revised profit margin estimates under LTSAs, including due to 'cost changes'; that revisions could affect an LTSA's 'total estimated profitability resulting in an adjustment of earnings'; and that revisions had 'increased earnings by $2.2 billion, $1.4 billion and $1.0 billion in 2016, 2015 and 2014, respectively." ECF No. 24, at 7; *see also* Defs.' Mem. 16; ECF No. 19-8 (2016 10-K). Amorosa asserts that these "so-called 'disclosures' . . . would be incomprehensible to a reasonable investor," Pl.'s Opp'n 20, but does not explain how, if at all, they are inaccurate or misleading.

8

were critical to the Court's rulings in *Sjunde I* and *Sjunde II*, *see Sjunde I,* 417 F. Supp. 3d at 408-09,[6] and, as discussed above, Amorosa may not rely on those statements.  Amorosa argues, in the alternative, that the allegations he copied from the SEC's findings fill the gap.  But the SEC made no findings regarding scienter and did not bring any scienter-based claims.  *See* Compl. ¶ 11 ("The SEC Order . . . . state[s] nothing one way or the other about GE's intent or negligence.").  Amorosa posits that Defendants' "intent to deceive" is "[i]mplicit in the SEC's findings," *id.*, but, even if true, that is plainly insufficient under the PSLRA, which requires a plaintiff to "state with particularity facts giving rise to a strong inference that [each] defendant acted with the required state of mind," 15 U.S.C. §78u-4(b)(2)(A).

Finally, Amorosa invites the Court to consider the factual allegations contained in the SEC Order and find that, without more, they establish scienter.  *See* Pl.'s Opp'n 16-18.  Specifically, Amorosa points to allegations in the SEC Order that some unnamed executives questioned whether the GE Power Services business was economically viable and referred to deferred monetization as not sustainable and that some "high officials" described deferred monetization as like "a drug because the company needed to continue to do more deferred monetization to achieve equivalent effects period after period."  Compl. ¶¶ 33, 36; Pl.'s Opp'n 16-18.  But the Complaint contains no allegations "made directly by Plaintiff[]" or "additional factual pleadings . . . sufficient to render unproblematic . . . [the] reliance on the SEC findings."

---

[6]     Specifically, the Court noted that "[t]he Complaint details, through allegations by former employees with firsthand knowledge among other things, that GE was factoring 'everything' in its Power and Renewable Divisions, including as many LTSAs as it could," and that factoring was "reported in weekly, monthly and quarterly reports, that were integrated into presentations for GE's Power's global leadership." *Sjunde I*, 417 F. Supp. 3d at 408-09.  The Court held that these "same allegations support[ed] a 'strong inference' that GE and at least some of the Individual Defendants were 'at least consciously reckless regarding whether their failure to provide adequate Item 303 disclosures . . . would mislead investors about material facts." *Id.* at 409 (quoting *Stratte-McClure*, 776 F.3d at 105); *see also*, *Sjunde II*, 2021 WL 311003, at *11.

*Loreley*, 797 F.3d at 180; *accord CVR Energy, Inc. v. Wachtell, Lipton, Rosen & Katz*, No. 14-CV-6566 (RJS), 2019 WL 8165893, at *3 (S.D.N.Y. Oct. 9, 2019), *aff'd*, 830 F. App'x 330 (2d Cir. 2020) (summary order).  Moreover, the SEC Order does not describe the relevant documents with sufficient detail or state who, specifically, made the relevant statements, as required to satisfy the heightened pleading requirements of Rule 9(b).  Needless to say, Amorosa does not plug these holes because he concededly has not examined the documents and knows nothing about the circumstances of the alleged statement.  *See* Pl.'s Opp'n 6 ("The SEC had subpoena powers and presumably deposed GE employees.  Plaintiffs of course have and had no subpoena powers, and no way to obtain the documents and testimony."); *id*. ("There was no way Plaintiffs would be able to duplicate the SEC's investigation even if they had resources, which they do not.").  "[A]t the motion to dismiss stage, Item 303's disclosure mandate requires that a plaintiff plead, *with specificity*, facts establishing that the defendant had actual knowledge of the purported trend, demand, commitment, event, or uncertainty." *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 810-811 (S.D.N.Y. 2018) (emphasis added); *accord Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 (2d Cir. 2016).  Alleging that some unnamed executives questioned GE Power's strategy in an internal meeting is a far cry from establishing that "[D]efendants knew that their disclosures were false or misleading." *Sjunde I*, 417 F. Supp. 3d at 403.[7]

That leaves only Amorosa's state-law claim for common law fraud.  *See* Compl. ¶¶ 121-27; Pl.'s Opp'n 21.  Pursuant to Title 28, United States Code Section 1367, a district court has discretion over whether to exercise jurisdiction over state-law claims "that are so related to

---

[7] Given the absence of a "primary violation," Amorosa's Section 20(a) "control person" claims against Bornstein fail as a matter of law as well.  *See, e.g.*, *Eagle Equity Funds, LLC v. Centrais Eletricas Brasileiras S/A - Eletrobras*, No. 19-CV-9344 (JMF), 2021 WL 371449, at *7 (S.D.N.Y. Feb. 3, 2021) (citing cases).

claims in the action within [the] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Supreme Court and the Second Circuit have made clear, however, that, as a general rule, "when the federal claims are dismissed, the state claims should be dismissed as well." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (internal quotation marks omitted); *see also Bright Kids NYC Inc. v. Kelly*, No. 19-CV-1175 (JMF), 2021 WL 3931876, at *2 (S.D.N.Y. Sept. 2, 2021). Here, there is no basis to depart from that general rule. That is, given the relatively early stage of the case, the traditional "values of judicial economy, convenience, fairness, and comity" that the Court must consider do not counsel in favor of exercising jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Accordingly, Amorosa's state-law claims are dismissed without prejudice to refiling them in state court. *See* 28 U.S.C. § 1367(c).

## CONCLUSION

A plaintiff alleging securities fraud who opts out of a class action must, like any other plaintiff, meet the "demanding" pleading requirements of Rule 9(b) and the PSLRA. *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 161 (2d Cir. 2021). Amorosa does not cite, and the Court has not found, any case in which a court has allowed a securities fraud claim to proceed where, as here, every factual allegation was sourced secondhand. Accordingly, and for the reasons stated above, Defendants' motion to dismiss must be and is GRANTED.

That leaves the question of whether Amorosa should be granted leave to amend. Notably, Amorosa already had one opportunity to amend (following Defendants' initial motion to dismiss), and he has not requested leave to amend again. Moreover, there is good reason to doubt that Amorosa will be able to remedy the substantive issues identified above. That said,

mindful that leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court will grant Amorosa one final chance to amend, *see, e.g.*, *Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017) ("Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend." (internal quotation marks omitted)); *Barron v. Helbiz, Inc.*, No. 21-278, 2021 WL 4519887, at *3 (2d Cir. Oct. 4, 2021) (summary order) ("Plaintiffs' failure to formally move for amendment is not a sufficient ground to prohibit them from amending now."); *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) ("We have been particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue."). Amorosa shall file any Second Amended Complaint **within thirty days of this Opinion and Order**.

The Clerk of Court is directed to terminate ECF No. 18.

SO ORDERED.

Dated: August 19, 2022
New York, New York

JESSE M. FURMAN
United States District Judge