UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
DOMINIC F. AMOROSA et al.,                                             :
                                                                       :
                              Plaintiffs,                              :
                                                                       :       21-CV-3137 (JMF)
              -v-                                                      :
                                                                       :       OPINION AND ORDER
GENERAL ELECTRIC COMPANY et al.,                                       :
                                                                       :
                              Defendants.                              :
                                                                       :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In this case, familiarity with which is presumed, Plaintiffs Dominic F. Amorosa and Dominic F. Amorosa, Esq., Profit Sharing Plan (together, "Amorosa") bring common-law fraud claims and federal securities-fraud claims, the latter under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a) (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), against General Electric Company ("GE") and its former Senior Vice President and Chief Financial Officer, Jeffrey Bornstein ("Bornstein"). In a prior Opinion and Order, the Court found that Amorosa sourced every factual allegation in his complaint secondhand and accordingly dismissed his claims under Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See Amorosa v. Gen. Elec. Co.* ("*Amorosa I*"), No. 21-CV-3137 (JMF), 2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022) (ECF No. 28). Thereafter, Amorosa filed the operative Second Amended Complaint (the "SAC"). ECF No. 29 ("SAC"). Defendants now move again, pursuant to Rules 9(b) and 12(b) of the Federal Rules of Civil Procedure, to dismiss. ECF No. 30. For the reasons that follow, their motion is granted.

**DISCUSSION**

Amorosa's claims center on Defendants' alleged misstatements regarding GE's practice of factoring its accounts receivable and whether it was doing so to generate short-term cash flow or to manage its credit risk. *See* SAC ¶¶ 9-11. Significantly, Amorosa's claims largely mirror claims that the Court has dismissed four times already — in *Amorosa I*, as well as *Sjunde AP-Fonden v. General Electric Co.* ("*Sjunde I*"), 417 F. Supp. 3d 379 (S.D.N.Y. 2019); *Sjunde AP-Fonden v. General Electric Co.* ("*Sjunde II*"), No. 17-CV-8457 (JMF), 2021 WL 311003 (S.D.N.Y. Jan. 29, 2021); and *Touchstone Strategic Trust v. General Electric Co.*, 19-CV-1876 (JMF), 2022 WL 4536800 (S.D.N.Y. Sept. 28, 2022).[1] The Court agrees with Defendants that Amorosa's amended claims fare no better and, thus, dismisses the SAC in its entirety.

**A. Untimely Statements**

For starters, many of Amorosa's claims are time barred. Title 28, United States Code, Section 1658(b)(2) provides that "a claim of fraud . . . concerning the securities laws . . . may be brought not later than . . . 5 years after such violation." Section 1658(b)(2) is an "unqualified bar" that "giv[es] defendants total repose" once the five-year window closes. *Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010); *see also SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173, 176 (2d Cir. 2016) (identifying Section 1658(b)(2) as a statute of repose). Significantly, the clock begins running from the date of each alleged misstatement, *see, e.g.*, *Sjunde I*, 417 F. Supp. 3d at 391; *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 3d 360, 378 (S.D.N.Y. 2013), and is not subject to equitable tolling, *see SRM Glob. Master Fund Ltd. P'ship*, 829 F.3d at 177. And of particular relevance here, claims based

---

[1]   The Court incorporates by reference its discussion of both the relevant facts and the applicable legal standards in these earlier opinions.

on previously unalleged misstatements cannot "relate back" to the filing of an earlier complaint under Rule 15(c) of the Federal Rules of Civil Procedure if the newly filed claims would otherwise be barred by the statute of repose. *See, e.g.*, *Sjunde I*, 417 F. Supp. 3d at 391-92; *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 3d at 379-80.

In this case, Amorosa filed the initial complaint on April 12, 2021, *see* ECF No. 1 ("Initial Compl."), the first amended complaint on July 6, 2021, *see* ECF No. 17 ("FAC"), and the operative SAC on September 13, 2022, *see* SAC. Thus, the Court must dismiss claims based on alleged misstatements made prior to September 13, 2017, that are not alleged in either of the first two complaints. That applies to claims based on the following alleged misstatements:

- GE's 2015 Form 10-K, *see* SAC ¶ 19;
- Bornstein's and then-CEO Jeffrey Immelt's remarks during a July 22, 2016 earnings call, *see id.* ¶¶ 24-25;
- Bornstein's and Immelt's remarks during an October 21, 2016 earnings call, *see id.* ¶¶ 27-28;
- GE's Q3 2016 Form 10-Q, *see id.* ¶ 30; and
- Immelt's remarks during a January 20, 2017 earnings call, *id.* ¶ 32.

In arguing otherwise, Amorosa contends that his "initial Complaint asserted that Bornstein falsified all of GE's 10Qs and 10Ks from 2015 through 2017 in respect to [its] factoring programs, and made false statements on January 20, 2017" and that "[t]hese are the very same claims made in the SAC." ECF No. 35 ("Pls.' Opp'n"), at 22.

That is not so. Amorosa's initial complaint merely alleged that there were misstatements in GE's "annual [SEC] report[s]," "quarterly [SEC] reports," and "quarterly earnings calls," without specifying more. Initial Compl. ¶ 34. (Moreover, these allegations were copied verbatim from the consent decree between GE and the SEC. *Compare* Initial Compl. ¶ 34, *with* ECF No. 19-13, ¶ 15.) As this Court has already explained, however,

3

> [s]ecurities fraud claims arise from, among other things, *specific* "statements of a material fact" and *specific* material omissions, 17 C.F.R. § 240.10b-5(b), 15 U.S.C. § 78u-4(b)(1), not from the documents in which those statements are contained. The statute of repose for such claims begins running from the time that each allegedly fraudulent statement or omission is made. Accordingly, a timely raised claim based on misleading statements made [five years before the filing of the operative complaint] does not somehow preserve other, as-yet-unpleaded claims based on different misleading statements, even if the two sets of misleading statements were made at the same time and in the same document.

*Sjunde I*, 417 F. Supp. 3d at 392 (cleaned up); *see also, e.g.*, *Chien v. Skystar Bio Pharm. Co.*, 566 F. Supp. 2d 108, 115 (D. Conn. 2008) (holding that claims were not well pleaded under Rule 9(b) and the PSLRA where the complaint "ma[de] repeated allegations that [the defendant company's SEC] filings were inaccurate and false, without specifying which statements [in those filings the plaintiff] has in mind" (cleaned up)), *aff'd*, 378 F. App'x 109 (2d Cir. 2010); *In re Open Joint Stock Co. "Vimpel-Commc'ns" Sec. Litig.*, No. 04-CV-9742 (NRB), 2006 WL 647981, at *5 (S.D.N.Y. March 14, 2006) (similar, but where the complaint block-quoted large excerpts from the defendant company's SEC filings and press releases and "fail[ed] to identify which statements in those documents were misleading").

In short, "there is no principled basis" to accept Amorosa's attempts to avoid the statute of repose as to most of his claims. *Sjunde I*, 417 F. Supp. 3d at 392. Accordingly, his claims based on the above statements must be and are dismissed with prejudice. *See id.* (dismissing with prejudice similar claims barred by the statute of repose).

**B.  Timely Statements**

That leaves only Amorosa's claims with respect to Bornstein's remarks during an April 21, 2017 conference call, SAC ¶ 62; GE's 2016 Form 10-K, *id.* ¶ 37; GE's Q3 2017 Form 10-Q, *id.* ¶ 58; and Bornstein's remarks during a January 20, 2017 earnings call, *id.* ¶ 36. All of these claims fail as a matter of law for other reasons.

For starters, the Court previously considered, and dismissed, claims based on Bornstein's April 21, 2017 statements. *See Sjunde I*, 417 F. Supp. 3d at 412 n.24; *Sjunde II*, 2021 WL 311003, at *12; *Amorosa I*, 2022 WL 3577838, at *3. Amorosa alleges no new facts that would alter the Court's prior conclusion. Second, although the Court allowed claims based on GE's 2016 Form 10-K to proceed in *Sjunde I*, *see* 417 F. Supp. 3d at 413-14, and *Sjunde II*, *see* 2021 WL 311003, at *13, those rulings were based on information from confidential witnesses that Amorosa does not — and cannot — rely on here, *see Amorosa I*, 2022 WL 3577838, at *4 ("[T]he statements of the former employees alleged in the [*Sjunde* complaints] were critical to the Court's rulings in *Sjunde I* and *Sjunde II* and, as discussed[,] . . . Amorosa may not rely on those statements." (citation omitted)); *see also Touchstone Strategic Tr.*, 2022 WL 4536800, at *4 (dismissing identical claims because the plaintiffs could not rely on the confidential witnesses that carried the claims in *Sjunde I* and *Sjunde II*). As in *Amorosa I*, without the statements of these confidential witnesses, Amorosa is left with nothing to support his claims based on the 2016 Form 10-K. The same is true with respect to the Q3 2017 Form 10-Q, as Amorosa's theory of fraud with respect to that document is the same as his theory as to the 2016 Form 10-K. *Compare* SAC ¶¶ 37, 40 (alleging the 2016 Form 10-K is misleading because it stated that GE was factoring to manage credit risk, when it was actually doing so to prop up its short-term cash flow), *with id.* ¶ 58 (alleging the Q3 2017 Form 10-Q is misleading for the same reason).[2]

---

[2] For the same reasons, the Court dismisses Amorosa's claims that GE failed to provide adequate Item 303 disclosures regarding its factoring practices. *See* SAC ¶¶ 67-69; *see also Amorosa I*, 2022 WL 3577838, at *4; *Touchstone Strategic Tr.*, 2022 WL 4536800, at *4. In any event, as described below, Amorosa offers nothing to establish scienter with respect to these claims. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015) ("For Defendants' breach of their Item 303 duty to be actionable under Section 10(b), Plaintiffs were required adequately to plead each element of a 10b-5 securities fraud claim.").

And finally, Amorosa fails to state a plausible claim with respect to Bornstein's statements during the January 20, 2017 earnings call. Although the Court previously dismissed claims premised on these statements, *see Sjunde I*, 417 F. Supp. 2d at 414; *Sjunde II*, 2021 WL 311003, at *12; *Amorosa I*, 2022 WL 3577838, at *3, Amorosa now relies on a new piece of evidence: a slide produced during discovery in *Sjunde* that Bernstein purportedly relied on to prepare for his January 20, 2017 remarks and that Amorosa argues "establishes . . . [Bornstein's] scienter." Pls.' Opp'n 1, 18; *see* SAC ¶ 46. The slide allegedly quantified the extent of GE's factoring over the prior fifteen months and the impact that factoring had on GE's operating cash flow. *See* SAC ¶ 46.[3] But far from helping Amorosa, this evidence actually cuts against an inference of scienter because, as Amorosa concedes, the slide was "*consistent* with the [allegedly] false statements Bornstein made during the [January 20, 2017] conference." *Id.* ¶ 47 (emphasis added). That is, the SAC does not allege that Bornstein knew the slide was false or created to hide information. Accordingly, Amorosa's concession that the slide was consistent with Bornstein's statements rebuts any inference of scienter.

In any event, the SAC also falls short of adequately pleading scienter. Apart from improper reliance on the SEC consent decree, *see id.* ¶ 65; *Amorosa I*, 2022 WL 3577838, at *4 (rejecting Amorosa's reliance on the SEC consent decree in alleging scienter), and conclusory allegations of scienter, *see, e.g.*, SAC ¶¶ 46-47, 65 (each containing multiple "truths" that Bornstein allegedly "knew"), Amorosa's argument on that front boils down to the assertion that

---

[3] Notably, Amorosa does not allege that he personally saw the slide — which was filed under seal in *Sjunde*. *See* ECF No. 358-9, No. 17-CV-8457 (JMF) (S.D.N.Y. Sept. 6, 2022). Instead, he relies on *Sjunde* class counsels' characterization of the slide. *See* SAC ¶¶ 46-47; *see also* ECF No. 36 ("Defs.' Reply"), at 2 ("What the SAC conspicuously fails to allege, however, is that Amorosa ever saw the [slide], spoke to any witnesses about the [slide], or even made any attempt to verify anything about the [slide's] contents.").

6

Defendants repeatedly made false or misleading statements and that that is *itself* probative of scienter. *See, e.g., id.* ¶ 65 (alleging scienter because "Bornstein signed and certified as accurate the 2016 Form 10K which falsely stated that GE's extensive factoring with GE Capital was done in order to manage credit exposure" (internal quotation marks omitted)); *id.* (same, but because "Bornstein failed to disclose on January 20, 2017, in response to a question about the extent of factoring in 2016, that GE had booked an additional $1.6 billion in [cash flow from operating activities ('CFOA')] from the sale of long-term receivables"); *see also* Pls.' Opp'n 18 ("Bornstein . . . repeatedly signed false regulatory filings in 2015 and 2016 . . . . [T]hese false filings . . . alone are sufficient [to establish scienter]."); *id.* ("Bornstein's scienter is also established also [*sic*] by the lies he told investors on January 20, 2017 . . . ."); *id.* ("Bornstein's failure to reveal on January 20, 2017 that the $1.6 billion of CFOA GE booked in excess of the CFOA it booked in 2015 creates a strong inference, by itself, of scienter."). But as the Court recently observed in another case, this is a "circular argument . . . without merit." *In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, — F. Supp. 3d —, 2023 WL 2308151, at *5 n.6 (S.D.N.Y. 2023); *see also, e.g., In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 24 (S.D.N.Y. 2016) ("[A]lleging that [statements] were incomplete or that they omitted material information[ ] is not enough to plead scienter . . . ."). More broadly, Amorosa's arguments with respect to scienter fall short, substantially for the reasons set forth by Defendants in their motion papers. *See* ECF No. 31 ("Defs.' Mem."), at 8-15; Defs.' Reply 3-6.

## C. Remaining Claims

With that, only two claims remain: Amorosa's "controlling person" claim, *see* SAC ¶¶ 102-07, and his claim for common-law fraud under state law, *see id.* ¶¶ 108-14. The former must be and is dismissed because, for the reasons discussed above, Amorosa fails to plead a

7

"primary violation" of the Exchange Act. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 356-57 (2d Cir. 2022). Given the relatively early stage of the case and the traditional "values of judicial economy, convenience, fairness, and comity" that the Court must consider, the Court declines to exercise supplemental jurisdiction over the latter pursuant to 28 U.S.C. § 1367. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see* Pls.' Opp'n 24-25 (conceding that the Court should decline to exercise supplemental jurisdiction over the state claims if the federal claims are dismissed). Accordingly, the state-law claim is dismissed without prejudice to refiling it in state court. *See, e.g.*, *Touchstone Strategic Tr.*, 2022 WL 4536800, at *7 (dismissing state-law fraud claims under identical circumstances).

### D. Leave to Amend

That leaves the question of whether Amorosa should be granted leave to amend. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Magmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks omitted). Here, Amorosa does not request leave to amend, and the Court declines to grant him leave *sua sponte* for several reasons. First and foremost, he was already granted two opportunities to amend — first, in response to Defendants' first motion to dismiss, *see* ECF No. 16; and second, after the Court dismissed his first amended complaint in *Amorosa I*. Moreover, when granting Amorosa leave to amend in response the Court's decision in *Amorosa I*, the Court expressly cautioned that he would receive only "one final chance to amend." 2022 WL 3577838, at *5. In light of that history, Amorosa's "failure to fix deficiencies in [his] previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) (citing cases).

Finally, Amorosa does not request leave to amend for a third time and does not suggest that he is in possession of facts that would cure the problems with his claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint."). Accordingly, the Court declines to grant Amorosa leave to amend *sua sponte*. *See, e.g.*, *Bromfield-Thompson v. Am. Univ. of Antigua*, No. 20-3855, 2021 WL 4931953, at *2 (2d Cir. Oct. 22, 2021) (summary order) (finding no abuse of discretion where the plaintiff "did not request leave to amend her complaint a second time in the district court, and the district court clearly warned her that she would forfeit the chance to address any issues raised in the motions to dismiss if she did not address those issues in her amended complaint"); *see also Touchstone Strategic Tr.*, 2022 WL 4536800, at *7 (denying leave to amend in virtually identical circumstances).

### E. Rule 11 Sanctions

The PSLRA mandates that, at the conclusion of any private securities action, a district court "shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1); *see Rombach v. Chang*, 355 F.3d 164, 178 (2d Cir. 2004); *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 377-79 (S.D.N.Y. 2010). If any party believes that another party should be subject to sanctions under Rule 11(b), the party shall file a motion to that effect, supported by proposed findings of fact and conclusions of law, **within three weeks of the date of this Opinion and Order**. At the same time, the moving party shall submit copies of the proposed findings of fact and conclusions of law, in Microsoft Word format, by e-mail to the

Court. Any opposition to such a motion, supported by competing proposed findings of fact and conclusions of law, shall be filed **within two weeks of the motion**. No replies may be filed without prior leave of Court.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss must be and is GRANTED. The Clerk of Court is directed to terminate ECF No. 30, to enter judgment consistent with this Opinion and Order, and to close the case. The Court retains jurisdiction to decide whether sanctions should be imposed under Rule 11(b).

SO ORDERED.

Dated: June 6, 2023
New York, New York

                                        JESSE M. FURMAN
                                        United States District Judge